975 F.2d 695
 23 Fed.R.Serv.3d 792
 FEDERAL DEPOSIT INSURANCE CORPORATION, as Manager for the
FSLIC Resolution Fund, Plaintiff-Appellee,
v.
GELDERMANN, INC., an Illinois corporation; UMIC, Inc., a
Tennessee corporation; Charles Alex Denney;
Arthur A. Wallace; Gregg Crosby,
Defendants-Appellants,
and
Bryan F. Green, Defendant.
 Nos. 91-6035, 91-6044.
 United States Court of Appeals,
Tenth Circuit.
 Sept. 14, 1992.
 
 Phil C. Neal of Neal Gerber & Eisenberg, Chicago, Ill. (James W. McDonnell, Jr. and Robert A. McLean of McDonnell Boyd, Memphis, Tenn., A. David Necco of Dyer, Necco & Byrd, Oklahoma City, Okl., Timothy J. Carey and Mark T. Carberry of Neal Gerber & Eisenberg, Chicago, Ill., and Phillip T. Powers of Altheimer & Gray, Chicago, Ill., with him on the brief) for defendants-appellants.
 Eugene J. Comey of Comey & Boyd, Washington, D.C. (Robert F. Schiff and Beth M. Bollinger of Comey & Boyd, Douglas G. Thompson, Steven M. Rosenberg, and Arthur J. Salzberg of Finkelstein, Thompson & Loughran, and Patricia F. Bak, F.D.I.C., of counsel, Washington, D.C., with him on the brief), for plaintiff-appellee.
 Before LOGAN, BALDOCK, and EBEL, Circuit Judges.
 EBEL, Circuit Judge.
 
 
 1
 This is an appeal from a district court order enjoining Defendants from bringing contribution and/or indemnity actions against certain nonparties. 763 F.Supp. 524 (W.D.Okl.1990). The district court certified the order as final pursuant to Federal Rule of Civil Procedure 54(b). We hold that we have jurisdiction to consider this appeal under 28 U.S.C. § 1292 notwithstanding the fact that the district court's Rule 54(b) certification was improper. Second, we hold that the Federal Deposit Insurance Company, which had requested the bar order, was not the real party in interest with respect to the bar order. Thus, we reverse the bar order.
 
 FACTS
 
 2
 Between 1984 and 1986, the Universal Savings Association of Chickasha, Oklahoma ("Universal"), entered into allegedly unprofitable transactions in commodity futures and options on commodity futures contracts. In 1987, the Federal Home Loan Bank Board closed Universal, and the Federal Savings & Loan Insurance Corporation ("FSLIC") was appointed as receiver. The Federal Deposit Insurance Corporation ("FDIC") succeeded the FSLIC as receiver pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"). 12 U.S.C. § 1821a(a)(5)(A). In this action (the "Instant Action"), the FDIC sued the following defendants for Universal's losses in connection with the above-mentioned commodity futures transactions: (1) Geldermann, Inc. ("Geldermann"), a futures commission merchant, (2) UMIC, Inc. ("UMIC"), an introducing broker, (3) Charles Alex Denney, a UMIC employee, and (4) three former officers of Universal and/or its subsidiary, Universal Futures, Inc. ("UFI"): Arthur A. Wallace, Gregg Crosby, and Bryan T. Green (collectively, the "Defendants").
 
 
 3
 In unrelated litigation involving different transactions (the "Sevier" and "FIS" actions), the FDIC sued Michael Harris, a former president of Universal, and certain directors of Universal (the "Directors"). Although Harris and the Directors are not parties to the Instant Action and the Defendants have not alleged any claims against Harris and the Directors, there is a possibility that the Defendants may ultimately assert a claim for contribution or indemnity against Harris and the Directors for any liability the Defendants incur in the Instant Action.[1]
 
 
 4
 The FDIC reached a settlement ("Settlement Agreement") with Harris and the Directors (collectively referred to as the "Settlors") in the Sevier and FIS actions. However, that settlement was made contingent upon several occurrences, including the following: First, the FDIC had to release the Settlors from any liability to the FDIC in connection with the Instant Action. Second, the FDIC was required to obtain an order in the Instant Action barring the Defendants from seeking contribution or indemnity from the Settlors in connection with any liability that might be assessed against the Defendants in the Instant Action. Third, this order had to be certified as an immediately appealable judgment pursuant to Federal Rule of Civil Procedure 54(b) or otherwise qualify for interlocutory appeal.
 
 
 5
 Pursuant to the Settlement Agreement, the FDIC in the Instant Action moved for an Order Confirming Good Faith Settlement (of the Sevier and FIS claims)[2] and for an order barring the Defendants in the Instant Action from ever seeking contribution or indemnity from the nonparty Settlors in connection with the claims asserted in the instant action. The district court granted the FDIC's motion, over the objection of the Defendants. The court's order bars Defendants from asserting any claims for contribution or indemnity against the Settlors and provides for a possible setoff against any judgment that the FDIC may receive against the Defendants in the Instant Action. Under the order, the setoff is to reflect amounts that the FDIC has received from the Settlors and others to the extent they are found to be joint tortfeasors with the Defendants. The Defendants, with the exception of Green, appeal both the bar order and the Rule 54(b) certification.
 
 DISCUSSION
 I. Jurisdiction
 
 6
 The Appellants first argue that the district court erred by certifying its bar order as a final judgment pursuant to Rule 54(b). Accordingly, they move for dismissal of this appeal.[3]
 
 
 7
 We hold that the district court erred in issuing a Rule 54(b) certification in this case. Federal Rule of Civil Procedure 54(b) provides:
 
 
 8
 When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties....
 
 
 9
 Fed.R.Civ.P. 54(b).
 
 
 10
 The district court's Rule 54(b) certification was improper because the bar order certified does not address any "claim for relief ... presented in [this] action, whether as a claim, counterclaim, cross-claim, or third-party claim...." The Defendants in the Instant Action have not yet asserted any claim for indemnity or contribution against the Settlors, nor are the Settlors parties to the Instant Action. Thus, there could be no claims in the Instant Action against them. The FDIC sought unilaterally to raise the indemnification and/or contribution issues by means of its Motion Confirming Good Faith Settlement, wherein it requested an order barring the Defendants from seeking contribution or indemnity from the nonparty Settlors. But as we hold later in this opinion, the FDIC is not the real party in interest as to that issue, and thus that issue was not properly before the district court. Therefore, the bar order does not resolve any "claim for relief [that was] presented in [the] action." Hence, it was improper to certify the bar order as a final order under Rule 54(b), and we lack appellate jurisdiction to review it as a final decision under 28 U.S.C. § 1291.
 
 
 11
 However, we do have appellate jurisdiction to review this order under 28 U.S.C. § 1292. Because the district court's bar order expressly enjoins the Defendants from suing the Settlors for contribution or indemnity, it is an "interlocutory order[ ] ... granting ... injunctions ..." under 28 U.S.C. § 1292(a)(1). We have held that an interlocutory order expressly granting injunctive relief fits squarely within the plain language of § 1292(a)(1). Mai Basic Four, Inc. v. Basis, 962 F.2d 978, 981 (10th Cir.1992) (citing Tri-State Generation & Transmission Ass'n v. Shoshone River Power, Inc., 874 F.2d 1346, 1351 (10th Cir.1989)). As we noted in Mai Basic Four, " '[a]n order that prohibits a party from pursuing litigation in another court is unquestionably an injunction for purposes of interlocutory appeal under 28 U.S.C.A. § 1292(a)(1).' " 962 F.2d at 981 (quoting 16 Charles A. Wright, Arthur R. Miller, Edward H. Cooper & Eugene Gressman, Federal Practice and Procedure, § 3923 at 48 (1977)).
 
 
 12
 Thus, we conclude that we do have appellate jurisdiction under 28 U.S.C. § 1292 to review the district court's bar order.
 
 II. The Bar Order and Setoff Provisions
 
 13
 We hold that the FDIC is not the real party in interest to request a bar order preventing the Defendants in the Instant Action from asserting a claim of indemnity or contribution against the nonparty Settlors. Thus, Federal Rule of Civil Procedure 17(a) prevents the court from addressing the FDIC's request for such a bar.
 
 
 14
 Rule 17(a) requires that "[e]very action shall be prosecuted in the name of the real party in interest." Fed.R.Civ.P. 17(a). We held in Boeing Airplane Co. v. Perry, 322 F.2d 589 (10th Cir.1963), cert. denied, 375 U.S. 984, 84 S.Ct. 516, 11 L.Ed.2d 472 (1964), that "the 'real party in interest' is the one who, under applicable substantive law, has the legal right to bring the suit." Id. at 591.
 
 
 15
 Contribution bar orders are frequently upheld when they are sought by a settling defendant against a nonsettling defendant in the same case. See e.g., In re Masters Mates & Pilots Pension Plan and IRAP Litigation, 957 F.2d 1020, 1031-32 (2d Cir.1992) (holding contribution bar appropriate as a matter of federal common law of ERISA but refusing to allow bar where due process rights of third parties are not protected and relative fault is not considered); In re Jiffy Lube Securities Litigation, 927 F.2d 155, 160 (4th Cir.1991) (stating bar order appropriate in partial settlement of securities litigation, but vacating order because district court failed to specify setoff method to be used); Franklin v. Kaypro Corp., 884 F.2d 1222, 1229 (9th Cir.1989) cert. denied, --- U.S. ----, 111 S.Ct. 232, 112 L.Ed.2d 192 (1990) (stating that contribution right is extinguishable and bar orders appropriate in securities class action); McDonald v. Union Carbide Corp., 734 F.2d 182, 184 (5th Cir.1984) (per curiam) (finding contribution bar appropriate where interests of remaining defendants are protected). These courts have concluded that they have the authority to enter such orders as an integral part of a settlement when the settling parties and all parties to the bar order are before the court. See In re Masters at 1031; McDonald at 184; In re Jiffy Lube at 160.
 
 
 16
 However, it is quite another matter when the bar order precludes a nonsettling defendant from maintaining a claim of contribution or indemnity against nonparties. The nonsettling defendant has nothing to win and everything to lose when the court considers such a bar order. If the court decides that the nonsettling defendant is entitled to assert a claim of contribution or indemnity against the nonparties, that determination would not bind the nonparties. Cf. Martin v. Wilks, 490 U.S. 755, 768, 109 S.Ct. 2180, 2187, 104 L.Ed.2d 835 (1989) (nonparty white firefighters not bound by a consent decree between black firefighters and the city of Birmingham, Alabama). On the other hand, a court order precluding the nonsettling defendant from suing the nonparties for indemnification or contribution would bind the nonsettling defendant. Any claims for contribution or indemnity that may be asserted by the defendants in the Instant Action against the Settlors must be adjudicated between them--not through the FDIC. Contribution and indemnity claims may involve consideration of many matters, such as personal defenses, compulsory counterclaims, and the like, which could not be asserted by or against the FDIC.[4]
 
 
 17
 It does not take too much imagination to see why the FDIC in the Settlement Agreement desired to negotiate away the Defendants' possible right to claim contribution or indemnity from the Settlors. The FDIC obviously could enhance the attractiveness of the settlement to the Settlors if it were able to bargain away not only its claims against the Settlors, but also the claims that other entities (including entities that are not even part of the Sevier or FIS suits) might have against the Settlors. However, the Defendants' potential rights of contribution and indemnity against the Settlors were not the FDIC's to settle.
 
 
 18
 The FDIC attempts to make much of the fact that both the Sevier court and the court in the Instant Action confirmed the good faith nature of the Settlement Agreement, and that an integral part of the settlement was a provision requiring the FDIC to obtain a bar order precluding the Defendants from asserting indemnity or contribution claims against the Settlors. However, in neither of the good faith confirmation proceedings were both the Defendants and the Settlors present at the same time. Such confirmation procedures often tend to be abbreviated, imprecise, and lacking in the constitutional safeguards provided by a full and adversarial trial. Cf. Miller v. Christopher, 887 F.2d 902, 908 (9th Cir.1989) (In a good faith hearing pertaining to a maritime settlement, the standard used by the court was a " 'grossly disproportionate' standard which finds good faith in a settlement which is in the 'ballpark.' "). Even if the Settlement Agreement were unquestionably in good faith, the FDIC still would not be the real party in interest for purposes of asserting the contribution bar.[5]
 
 
 19
 The district court Order Confirming Good Faith Settlement not only barred the Defendants from asserting contribution or indemnity against the Settlors; it also addressed the extent to which funds received by the FDIC through the Settlement Agreement should be credited against any judgment that the FDIC might receive against the Defendants in the Instant Action. After discussing various setoff approaches, the district court chose the "pro tanto rule."[6] In the Order Confirming Good Faith Settlement, the court approved a clause in the Settlement Agreement that provided that $725,000 of the amount received by the FDIC should be used to reduce in the aggregate any other awards that the FDIC might receive against "any tortfeasors [other than the Settlors], including the parties to [the Instant Action], who are liable in tort to FDIC as joint tortfeasors with the [Settlors]." Appellant's Exhibit A, at 18. This part of the order is filled with difficulties. First, whether a special pro tanto rule should be established for the FDIC presents some very difficult legal questions. Cf. Alvarado Partners, 723 F.Supp. at 550-53. In addition, the order purports to determine the maximum portion of the amount received by the FDIC in the Settlement Agreement that is to be credited collectively against any judgment that may be rendered against the Defendants in the Instant Action and against judgments that may be rendered against any other tortfeasors who might at some point in time be held to be joint tortfeasors with the Settlors. It is speculative because no judgment has yet been awarded against the Defendants in the Instant Action, and so the basis for, and amount of, any such judgment is not yet known. Whether the Settlors are joint tortfeasors with the Defendants is as yet totally unknown. Whether other suits may be brought against other joint tortfeasors is also unknown. Further, the record on appeal is devoid of any sufficient support for the court's determination that the maximum potential setoff should be in the amount of $725,000. Because that part of the district court's order barring contribution or indemnity against the Settlors is an important and integral part of the order, see In re Jiffy Lube Securities Litigation, 927 F.2d at 160, and because of the speculative and premature nature of the remainder of the order dealing with setoff, it is our judgment that the entire order should be vacated and this matter should be remanded to the district court for further proceedings in accordance with this opinion. At this time, we express no opinion as to whether the "pro tanto rule" is the appropriate legal standard for calculating the setoff for related settlements under the circumstances presented by this case.
 
 
 20
 Accordingly, we REVERSE the district court's Order Confirming Good Faith Settlement, and we REMAND this matter for further proceedings.
 
 
 
 [1]
 We do not address the merits of any possible contribution or indemnification claims that the Defendants may ultimately assert against Harris and the Directors. That issue has not yet properly been raised and hence is not before us
 
 
 [2]
 The Sevier court had also entered an order confirming the good faith of the settlement
 
 
 [3]
 It may seem odd, at first glance, for the Appellants to move for dismissal of their own appeal. However, the district court's Rule 54(b) certification effectively forced the Appellants to take an appeal before they otherwise would--or lose their appeal rights. For this reason, the Appellants request dismissal of their appeal
 
 
 [4]
 Although not directly controlling our case, we note that courts faced with the reverse of our situation have uniformly prohibited parties from seeking to preclude the rights of nonparties. See, e.g., Martin, 490 U.S. at 768, 109 S.Ct. at 2187; Hansberry v. Lee, 311 U.S. 32, 41, 61 S.Ct. 115, 118, 85 L.Ed. 22 (1940) ("[J]udicial action enforcing [a judgment] against the person or property of [an] absent party is not that due process which the Fifth and Fourteenth Amendments require."); Alvarado Partners, L.P. v. Mehta, 723 F.Supp. 540, 554 (D.Colo.1989) ("[T]o the extent settling parties seek to bar claims by [nonparty] entities ... fundamental due process principles prohibit [such] extinguishment....")
 
 
 [5]
 We note that Federal Rule of Civil Procedure 17(a) provides that
 [n]o action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by ... the real party in interest; and such ratification ... shall have the same effect as if the action had been commenced in the name of the real party in interest.
 Fed.R.Civ.P. 17(a).
 Because this issue is not before us, we express no opinion as to whether it would be appropriate at this late date to allow the Settlors to intervene in the Instant Action to seek such a bar order in their own names.
 
 
 [6]
 Singer v. Olympia Brewing Co., 878 F.2d 596, 600 (2d Cir.1989) cert. denied, 493 U.S. 1024, 110 S.Ct. 729, 107 L.Ed.2d 748 (1990) ("Under [the pro tanto] rule, when a plaintiff receives a settlement from one defendant, a nonsettling defendant is entitled to a credit of the settlement amount against any judgment obtained by the plaintiff against the nonsettling defendant as long as both the settlement and judgment represent common damages.")